## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **WOOD AUTOMOTIVE, INC.,**<br>    Plaintiff, | |
| v. | Case No. 1:24-cv-372-CLM |
| **MORROW AVIATION,** *et al.***,**<br>    Defendants. | |

### MEMORANDUM OPINION

Plaintiff Wood Automotive, Inc. ("Wood") tried to buy a business jet from Defendants Morrow Aviation, LLC ("Morrow") and Ackerman Aviation Group ("Ackerman"). The deal fell through, and Wood now sues Defendants, alleging they fraudulently represented the delivery date of the jet, causing Wood to pay around $350,000 in taxes. Wood pleads two counts: (1) fraudulent inducement and (2) negligence and wantonness. Morrow has moved to dismiss both counts. (Doc. 2). For the reasons stated below, the court **GRANTS** Morrow's motion to dismiss and gives Wood until **March 3, 2025,** to correct the pleading deficiency explained within.

### BACKGROUND

Because Defendants file a Rule 12 motion, the court takes the facts from Wood's complaint and assumes they are true:

Robert Wood owns Wood Automotive. Sometime in 2023, Wood's accountants told him that he needed to buy a plane and put it into service before December 31 to avoid a $350,000 tax liability.

In October, Wood found an online ad for a Learjet 31A that Morrow was selling for $1.195 million. Wood told Morrow that he was interested, but only if he could get the Learjet in the air by December 31. Ackerman was Morrow's selling agent. On October 18, Ackerman told Wood that the Learjet was undergoing a routine maintenance check but would return to

service in 10 days. Ackerman also told Morrow that the Learjet needed another "C/D" inspection that would halt the aircraft's in-service status until February 2024.

Based on Defendants' representations that the Learjet could be put in service in October after the routine maintenance check, Wood offered to buy the Learjet for $1.05 million and perform the C/D inspection himself later. Morrow accepted, and an agreement was reached on October 26, 2023.

But Wood never took the Learjet because he could not get it into the air by December 31. Wood says both Defendants knew they couldn't meet the deadline but didn't tell Wood. When Wood asked to test fly the jet in November, Defendants told Wood he could not because the windshield was replaced and had to be tested by Lockheed Martin before Wood could fly it. Finally, on December 22, Defendants admitted that the Learjet could not be put in service by December 31.

The parties rescinded the agreement. Because of the late date, Wood could not buy another jet before December 31. So Wood had to pay $350,000 in taxes that he could have avoided if the sale went through on time. Wood now sues Defendants to recoup its tax payment.

## STANDARD OF REVIEW

1. *General Rule 8 Standard:* Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 570). "[A] court should only grant a motion to dismiss [under Rule 12(b)(6)] where the defendant demonstrates that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

2. *Heightened Rule 9 Standard:* Fraud-based claims must also satisfy Rule 9(b)'s heightened pleading standard, by "stat[ing] with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To meet that standard, the complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations and quotation marks omitted).

## DISCUSSION

Morrow asks the court to dismiss the case because the court lacks personal jurisdiction.[1] Alternatively, Morrow argues that Wood's original complaint should be dismissed either because it is a shotgun pleading or because it fails to sufficiently plead fraud. The court addresses the arguments in that order.

### I. Personal Jurisdiction

Morrow is based in Texas and does business in Texas. Morrow argues that this court lacks personal jurisdiction over it because it lacks sufficient contacts in Alabama.

---

[1] To date, Ackerman has not been served. (Doc. 15).

1. *Standard of Review*: Morrow takes no issue that the court has subject matter jurisdiction under the diversity statute, 28 U.S.C. § 1332(a), with Wood being the Alabama resident and Morrow being the nonresident. That means the court can exercise personal jurisdiction over Morrow under two conditions: (1) Alabama state courts would have personal jurisdiction under Alabama's longarm statute and (2) exercising personal jurisdiction would not violate federal due process requirements. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Fortunately, those inquiries merge because Alabama's longarm statute grants jurisdiction "when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States." Ala. R. Civ. P. 4.2(b).

So the question is whether exercising personal jurisdiction over Morrow would violate the Fourteenth Amendment's Due Process Clause. "At bottom, due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless its contacts with the state are such that it has fair warning that it may be subject to suit there." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1024 (2021)). To make that determination, the court must look at three things:

- Do Wood's claims "arise out of or relate to one of Morrow's contacts with the forum state;"
- Did Morrow "purposefully avail itself of the privilege of conducting activities within the forum state;" and,
- Would exercising personal jurisdiction over Morrow agree with "traditional notions of fair play and substantial justice."

*Id*. Wood must plead enough facts to establish the first two points. If it does, Morrow must then "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.*

2. *Relatedness*: Wood alleges that the Morrow placed the Learjet for sale on a third-party website that was accessible to buyers in Alabama and that Morrow intentionally entered into a purchase contract with Wood, a company that does business in Alabama.

The court finds this is enough to show contact with Alabama. Taking Wood's alleged facts as true, which the court must do at the pleading stage, Morrow intentionally allowed Controller to advertise its aircraft to Alabama buyers. That's enough, as shown by the Eleventh Circuit's recent finding that the relatedness element was "readily met" when Booking.com and Expedia used their websites to target Florida residents and some Florida residents used those sites to book rooms. *See Del Valle*, 56 F.4th at 1275.

3. *Purposeful Availment*: There are two tests for purposeful availment: the effects test and the minimum contacts test. *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Wood only needs to satisfy one test. Wood relies on the effects test, successfully.

"Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment without regard to whether the defendant had any other contacts with the forum state. [citation omitted]. The test is met when the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.*

Morrow intentionally contracted with an Alabama business to ultimately deliver (or have delivered) a Learjet to Alabama, knowing that the Alabama business had to receive and fly the Learjet in Alabama before December 31, 2023. The alleged tort alleged is Morrow's failure to tell Wood that the Learjet would not be ready for purchase by a specified date. Based on the pleaded facts, Morrow knew that Wood would suffer an injury in Alabama if performance was untimely because Wood told Morrow. The court finds this is sufficient for purposeful availment.

  4. *Fair play and substantial justice*: Because Wood met its burden, the burden shifts to Morrow in the 'fair play and substantial justice' prong, which considers (1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" *Del Valle*, 56 F.4th at 1277. Morrow argues that defending the claims would offend traditional notions of fair play and substantial justice. Morrow highlights that it did not expect to be haled into court in Alabama. The court disagrees.

  When Morrow entered into a purchase agreement with an Alabama entity, Morrow should have reasonably expected that it could be haled into an Alabama court. Morrow also highlights that both witnesses and relevant documentation are located in Texas. But this argument is futile. The State of Alabama has a special interest in exercising its jurisdiction over out-of-state residents who commit intentional torts causing injury to [its] residents. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008) (citing *Calder*, 465 U.S. at 776-77). Wood, an Alabama business, need not travel to Texas to seek redress when Wood was injured in Alabama. *Calder*, 465 U.S. at 1487.

---

 In sum, Wood pleads enough facts to establish that Alabama courts have specific personal jurisdiction over Morrow. So the court **denies** Morrow's motion to dismiss under Rule 12(b)(2).

## II. Shotgun Pleading (Rule 8(a)(2))

Morrow moves to dismiss Wood's complaint as a shotgun pleading under Rule 8(a)(2). The Eleventh Circuit has identified four categories of shotgun pleadings. The court highlights the relevant one:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint";
>
> (2) "a complaint that ... [is] replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action";
>
> (3) a complaint that fails to "separate[e] into a different count each cause of action or claim for relief"; and
>
> (4) a complaint "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. A dismissal under Rules 8(a)(2) and 10(b) is appropriate where "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325 (citing *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (emphasis added)).

Morrow says that, in his counts, Wood impermissibly lumps the two Defendants together. Morrow is right that in Count I, Wood lumps Defendants together when he says that "defendants, jointly and severally, made these representations to Wood[.]" (Doc. 1, p. 12). And the court agrees that Wood *should* have separated out the distinct representations

in the Count. But the court will not dismiss on this ground because Wood separates Defendants' statements out by date in his factual background. (Doc. 1, pp. 10-12). That is not to say, however, that Wood's pleading of those statements was sufficient. As explained below, it wasn't.

### III.   Pleading Fraud (Rule 9(b))

Morrow also argues that Wood fails to meet the heightened pleading standard of Rule 9(b) because Wood fails to state who precisely said that the Learjet could be put in service before December 31, 2023 and the manner in which that statement was made (*e.g.* email, text, or telephone).

Here are the facts that Wood pleads in its complaint:

> 6. Wood inquired about the plane and specifically informed Morrow Aviation that he would only purchase same if (sic) would be ready for service by December 31, 2023.
>
> 7. On October 18, 2023, Morrow Aviation, through its selling agent, defendant Ackerman Aviation Group, represented to Wood that the plane was undergoing a twelve year A/B maintenance check, and would return to service in 10 days. . . .
>
> 11. Wood relied on the representations of Morrow Aviation and Ackerman Aviation that the plane would return to service within ten (10) days of the offer of purchase.

(Doc. 1, p. 23). This is not enough to satisfy Rule 9(b), which requires Wood to plead particular facts like (1) the content of the fraudulent statement(s), (2) the person who made the statement, (3) the manner the statement was made (*e.g.*, by text or email), (4) the time and place of the statement, and (5) how the statement misled and thus injured Wood. *See Ziemba* 256 F.3d at 1202.

While Wood argues that it did plead enough facts to meet Rule 9(b), it argues alternatively that the court should allow it to plead more facts in an amended complaint. (Doc. 8, p. 13-14). And Wood attaches an

affidavit from Robert Wood that suggests Mr. Wood has more details about the many emails and phone calls between the parties. (Doc. 8-1).

Because it appears that Wood may be able to plead the facts necessary to satisfy Rule 9(b), the court will dismiss Wood's original complaint *without* prejudice and give Wood until **March 3, 2025**, to file an amended complaint that complies with Rule 9(b). When it does, Morrow should be mindful of the court's previous discussion of distinguishing *within each count* the allegations against the distinct defendants.

## CONCLUSION

For these reasons, the court **GRANTS** Morrow's Motion to Dismiss (doc. 2) and dismisses both counts without prejudice. Wood may file an amended complaint that complies with the rules and this order by **March 3, 2025.** The failure to timely file an amended complaint will result in the court dismiss Wood's complaint *with* prejudice.

**DONE** and **ORDERED** on February 18, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE